**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **)** | |
| | **)** | |
| | **)** | |
| **v.** | **)** | **2:21-cr-00015-JDL-1** |
| | **)** | **2:21-cr-00015-JDL-4** |
| **JASON CANDELARIO, et al.,** | **)** | |
| | **)** | |
| **Defendants.** | **)** | |

**ORDER ON DEFENDANT DAPRATO'S MOTION TO SEVER AND
DEFENDANT CANDELARIO'S MOTION TO SEVER OR EXCLUDE
EVIDENCE**

The indictment in this case (ECF No. 115) alleges that Defendants Jason Candelario, Luis Carpio, Andrew Soboleski, and Derek Daprato engaged in a Hobbs Act robbery conspiracy to violently steal marijuana and the proceeds of marijuana sales, among other crimes.[1]  During the investigation of the crime and immediately following the execution of a search warrant for Soboleski's DNA, Soboleski allegedly told FBI agents that he dropped off Candelario and Carpio at the location of the crime, that a person he thought was named Derek drove ahead of them, and that Soboleski returned later to pick up Candelario and Carpio.  Daprato moves (ECF No. 189) to sever his case from that of his codefendants.  Candelario also moves (ECF No. 191) to

---

[1] Count One charges all four defendants with conspiring to commit Hobbs Act robbery.  *See* 18 U.S.C.A. § 1951(a) (West 2022).  Count Two charges Candelario, Carpio, and Daprato with interfering with commerce by violence and aiding and abetting the same. *See id.*  Count Three charges Candelario, Carpio, and Daprato with discharging a firearm during a crime of violence and aiding and abetting the same.  *See* 18 U.S.C.A. § 924(c)(1)(A) (West 2022).  Count Four charges Candelario, Carpio, and Daprato with brandishing a firearm during a crime of violence and aiding and abetting the same. *See id.*  Count Five charges Candelario with being a felon in possession of firearms and ammunition.  *See* 18 U.S.C.A. § 922(g)(1) (West 2022).  Count Six charges Carpio with being a felon in possession of firearms and ammunition. *See id.*

sever his case or, alternatively, to exclude from evidence any statements made by any codefendant.

An indictment "may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). But "[i]f the joinder of . . . defendants in an indictment . . . appears to prejudice a defendant . . . , the court may . . . sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a).

Daprato argues that severance is required because Soboleski's alleged statement to the FBI incriminates Daprato and is admissible as to Soboleski (as his own admission) but not against Daprato. As such, introducing the statement would create a conflict between Daprato's right to confront Soboleski and Soboleski's right to remain silent. Daprato also contends that the Government's proposed redactions of Soboleski's statement are insufficient to avoid prejudice. Candelario makes the same arguments, adding that, if severance is not granted, Soboleski's statement and all other statements made by Candelario's codefendants should be excluded. Daprato also argues that severance is necessary because he would be prejudiced by "spillover" from the evidence admissible against his codefendants but not admissible against him.

I first address Daprato's and Candelario's Confrontation Clause arguments and then turn to Daprato's spillover argument.

## I.  CONFRONTATION CLAUSE

"The general rule is that defendants who are properly joined in an indictment should be tried together."  *United States v. Floyd*, 740 F.3d 22, 36 (1st Cir. 2014). "This rule has special force in conspiracy cases, in which the severance of coconspirators' trials 'will rarely, if ever, be required.'"  *Id.* (quoting *United States v. Flores-Rivera*, 56 F.3d 319, 325 (1st Cir. 1995)).  Joint trials "promote efficiency and 'serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'"  *Zafiro v. United States*, 506 U.S. 534, 537 (1993) (quoting *Richardson v. Marsh*, 481 U.S. 200, 210 (1987)).  However, "a district court should grant a severance under Rule 14 . . . if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants."  *Id.* at 539.

The Confrontation Clause of the Sixth Amendment guarantees a criminal defendant the right "to be confronted with the witnesses against him."  U.S. Const. amend. VI.  "The Supreme Court of the United States held in *Bruton* that a defendant is deprived of that right 'where the powerfully incriminating extrajudicial statements of a codefendant . . . are deliberately spread before the jury in a joint trial' and the 'alleged accomplice does not testify and cannot be tested by cross-examination.'" *United States v. de Leon-De La Rosa*, 17 F.4th 175, 190 (1st Cir. 2021) (alteration omitted) (quoting *Bruton v. United States*, 391 U.S. 123, 135-36 (1968)).  But "the Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession with a proper limiting instruction when . . . the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence." *Richardson*, 481 U.S. at 211.  That is true even when the redacted confession becomes

incriminating "when linked with evidence introduced later at trial." *Id.* at 208.  Yet a redacted confession violates the Confrontation Clause if it "'obviously' and 'directly' implicates the defendant in the crime" and would do so "even were the confession the very first item introduced at trial." *de Leon-De La Rosa*, 17 F.4th at 191 (quoting *Gray v. Maryland*, 523 U.S. 185, 196 (1998)).  Accordingly, "redactions that replace a proper name with an obvious blank, the word 'delete,' a symbol, or similarly notify the jury that a name has been deleted are similar enough to *Bruton*'s unredacted confessions as to warrant the same legal results," "for the jury will often realize that the confession refers specifically to the defendant." *Gray*, 523 U.S. at 193, 195.

In sum, even a redacted pretrial confession cannot be introduced if it is "powerfully incriminating," meaning "inculpatory on its face," either expressly or because of its immediately obvious implication.  *United States v. Vega Molina*, 407 F.3d 511, 520-21 (1st Cir. 2005).  As the First Circuit has acknowledged, "[t]his criterion is easier to state than to apply." *Id.* at 520.  Whether proposed redactions are sufficient "requires careful attention to both text and context, that is, to the text of the statement itself and to the context in which it is proffered." *Id*.  However, the context that a court may consider is limited:  "Statements that are incriminating only when linked to other evidence in the case do not trigger application of *Bruton's* preclusionary rule." *Id*.

In *Vega Molina*, the First Circuit approved a redacted confession that replaced codefendants' names with neutral phrases such as "other individuals" and "another person." *Id*.  The court reasoned, however, that this method of redaction is not always adequate. *Id.*  "A particular case may involve numerous events and actors, such that

4

no direct inference plausibly can be made that a neutral phrase like 'another person' refers to a specific codefendant." *Id.* But "[a] different case may involve so few defendants that the statement leaves little doubt in the listener's mind about the identity of 'another person.'" *Id.* In *Vega Molina*, the redaction sufficed in part because it referenced a deceased coconspirator. *Id.* at 521. That reference created ambiguity about whether the codefendants were the individuals referenced in the confession because it indicated that more people may have been involved in the crime than those who were on trial. *Id.*

Here, the Government proposes to redact Soboleski's alleged statement by referring to the codefendants as "individuals," as shown in the following table submitted by the Government:

| Soboleski's Unredacted Statement | Government's Proposal |
|---|---|
| 1. On August 2, 2019, Soboleski was contacted by either Luis Carpio or Jason Candelario, Soboleski was unable to recall which one. | 1. On August 2, 2019, Soboleski was contacted by one of two individuals, Soboleski was unable to recall which one. |
| 2. Soboleski was asked to give Candelario and Carpio a ride, for an unstated purpose. | 2. Soboleski was asked to give two individuals a ride, for an unstated purpose. |
| 3. Soboleski did not ask the purpose of the trip, nor was he to receive any cash or drugs for providing the ride. | 3. The Government submits that redacting this statement is unnecessary. |
| 4. Soboleski used Carpio's "girl" Suly's vehicle and drove Candelario and Carpio to a rural wooded location that he thought was in Maine. | 4. Soboleski used one of the individual's significant other's vehicle to drive the individuals to a rural wooded location that he thought was in Maine. |
| 5. No other individuals were present in the vehicle. | 5. The Government submits that redacting this statement is unnecessary. |
| 6. During the drive, Soboleski observed either Candelario or Carpio enter an address into GPS maps on their cellular | 6. During the drive, Soboleski observed one of the individuals enter an address into GPS maps on their cellular phone, |

| | |
|---|---|
| phone, which provided them on [sic] directions to the destination. | which provided directions to the destination. |
| 7. Soboleski was also following another individual he believed was involved, who was operating a white pickup truck. | 7. The Government submits that redacting this statement is unnecessary. |
| 8. Soboleski believed the operator's name was Derek, who possibly went by "D rock." | 8. The Government does not intend to introduce this statement in its case-in-chief. |
| 9. Soboleski did not know Derek's role in the robbery. | 9. The Government does not intend to introduce this statement in its case-in-chief. |
| 10. After dropping off Candelario and Carpio, Soboleski did not see Derek's truck again. | 10. After dropping off the other individuals, Soboleski did not see the truck again. |
| 11. When they arrived at the destination, Soboleski dropped Candelario and Carpio off and they went into the woods. | 11. When they arrived at the destination, Soboleski dropped off the other individuals, and they went into the woods. |
| 12. Soboleski was to drive around and wait to be contacted to pick up Candelario and Carpio. | 12. Soboleski drove around and waited to be contacted to pick up the other individuals. |
| 13. Soboleski stated that he drove around and also slept inside the vehicle while waiting. | 13. The Government submits that redacting this statement is unnecessary. |
| 14. Soboleski stated that he went to an Irving store parking lot. | 14. The Government submits that redacting this statement is unnecessary. |
| 15. Soboleski stated he was eventually contacted and went to pick up Candelario and Carpio. | 15. Soboleski was eventually contacted, and he went to pick up the other individuals. |
| 16. Soboleski stated that they smelled like a "swamp" but it was dark and he didn't see anything. | 16. The Government submits that redacting this statement is unnecessary. |
| 17. Soboleski stated that neither Candelario or Carpio said anything upon their return into the car. | 17. The other individuals did not say anything upon their return to the vehicle. |
| 18. Soboleski did not see any firearms or anything else, and that Candelario and Carpio were keeping things to themselves. | 18. Soboleski did not see any firearms or anything else. |
| 19. Soboleski provided Candelario and Carpio a ride back to the Manchester area. | 19. Soboleski drove the other individuals back to the Manchester area. |

The Government argues that its responses and proposed redactions are sufficient because of the redactions that the First Circuit endorsed in *Vega Molina*. The Government also contends that it does not need to redact the reference to the white pickup truck from statement seven because that detail does not facially incriminate Daprato.

Daprato counters that this case is different from *Vega Molina* because the absence of references to additional parties will lead the jury to conclude that the redacted statement must refer to Daprato, Candelario, and Carpio. Additionally, Daprato asserts that mentioning the white pickup truck is akin to identifying Daprato by a nickname, which would be prohibited. Finally, Daprato insists that, because the Government intends to introduce the alleged statement through the testimony of an FBI agent, redacting it would create artificial constraints on the defendants' cross-examinations and potentially cause a mistrial.

Candelario likewise stresses the differences between this case and *Vega Molina*, particularly the number of actors involved and the existence of other evidence that would plainly link Candelario to the redacted statement. He argues that the proposed redactions obviously imply that Soboleski named his codefendants because the redacted statement contains unnatural phrases like "Soboleski was contacted by one of two individuals, Soboleski was unable to recall which one." Candelario also asserts that the proposed redactions are unworkable because the defendants would be unfairly prevented from fully cross-examining the testifying officer about topics such as Soboleski's exact words.

The reference to the white pickup truck could be incriminating when linked to other evidence, but, if the alleged statement were the first piece of evidence at trial, no juror would connect the truck to Daprato. "The Supreme Court has held that an out-of-court confession of a non-testifying defendant that only 'inferentially incriminates' a codefendant who is on trial through deductive links to other evidence does not animate that codefendant's Sixth Amendment concerns in the same manner as a head-on accusation." *United States v. Padilla-Galarza*, 990 F.3d 60, 76 (1st Cir. 2021) (alterations omitted) (quoting *Richardson*, 481 U.S. at 208); *see also Richardson*, 481 U.S. at 209 ("If extended to confessions incriminating by connection, . . . it is not even possible to predict the admissibility of a confession in advance of trial."). Only when a confession itself is powerfully incriminating, either directly or through its immediately obvious implication, do we depart from "the almost invariable assumption of the law that jurors follow their instructions." *Richardson*, 481 U.S. at 206. "Where the necessity of . . . linkage is involved, it is a less valid generalization that the jury will not likely obey the instruction to disregard the evidence." *Id.* at 208; *accord United States v. Figueroa-Cartagena*, 612 F.3d 69, 85 (1st Cir. 2010). There is no need to redact the reference to the white pickup truck if the jury is instructed to consider the alleged statement only as to Soboleski.

Additionally, the Government's proposal to refer to the codefendants as "individuals" is not a prohibited "obvious indication of deletion." *Gray*, 523 U.S. at 192. It is true that a redacted confession must resemble something that "might actually have been said by a person admitting his own culpability in the charged conspiracy while shielding the specific identit[ies] of his confederate[s]." *United*

*States v. Jass*, 569 F.3d 47, 62 (2d Cir. 2009).  The Government might violate that rule if it were to introduce the proposed redactions as if they were Soboleski's exact words because the references to "individuals" could sound "suspiciously closer to the speech of a prosecutor than that of a perpetrator." *United States v. Taylor*, 745 F.3d 15, 29 (2d Cir. 2014).  But the Government's plan is instead to have an FBI agent testify about what Soboleski allegedly said.  A phrase like "Soboleski was contacted by one of two individuals, Soboleski was unable to recall which one" does not obviously betray the fact that Soboleski's original alleged statement contained actual names if it is clear that the testifying officer is paraphrasing.

Nor is this a case "involv[ing] few actors and events, such that a . . . neutral pronoun becomes transparent and leaves little doubt in the listener's mind about the identity of the person whose name has been removed." *Foxworth v. St. Amand*, 570 F.3d 414, 433 (1st Cir. 2009).  The indictment states that the four defendants "conspired with each other and *other persons*."  ECF No. 115 at 1 (emphasis added).  Based on this information, the named defendants do not represent the full extent of the alleged conspiracy.  The alleged redacted statement indicates that Soboleski and *at least* three others participated.  With the proposed redactions, it is ambiguous whether the person who originally contacted Soboleski in statement one was a potential fifth participant.  The scheme is not described so exhaustively that a listener could confidently conclude that only those four or five people were involved.  The alleged statement does not even describe the interference with commerce by violence or the discharge and brandishing of a firearm during a crime of violence that are charged in the indictment, leaving open the prospect of additional actors during those

events.  To the contrary, the gist of Soboleski's alleged statement is that he did not grasp what was going on and saw very little.  Given "the distinct possibility that people besides those who were on trial may have been involved in the commission of the crimes," there would be no obvious and immediate inference that the unidentified persons are Soboleski's codefendants.  *Vega Molina*, 407 F.3d at 521.

Finally, although courts must remain sensitive to the potential pitfalls of allowing an officer to testify about a redacted statement, *see Bruton*, 391 U.S. at 134 n.10; *United States v. Jedi*, 339 F. Supp. 3d 19, 24 (D.P.R. 2018), such an arrangement is not unusual.  In *Vega-Molina*, an FBI agent testified as to a redacted pretrial confession.  407 F.3d at 518-19.  The Confrontation Clause provides defendants with "the right to conduct such cross-examination as is reasonably necessary to delineate and present the defendant's theory of defense."  *Id.* at 522.  "So long as the trial court affords the defendant a fair opportunity for effective cross-examination, it may impose reasonable restrictions . . . ."  *Id.* at 523.  Daprato and Candelario have not shown that they would be deprived of a fair opportunity for effective cross-examination if they are not permitted to ask the FBI agent questions that would negate the redactions and thus create a *Bruton* problem.

Finally, Candelario's request to exclude all statements by his codefendants is significantly overbroad, as certain statements by his codefendants may be admissible against him or would be admissible against his codefendants without violating *Bruton*.  *See* Fed. R. Evid. 801(d)(2)(E) (providing that a statement "made by the party's coconspirator during and in furtherance of the conspiracy" is not hearsay); *Figueroa-Cartagena*, 612 F.3d at 85 ("Because it is premised on the Confrontation

Clause, the *Bruton* rule, like the Confrontation Clause itself, does not apply to nontestimonial statements." (quoting *United States v. Johnson*, 581 F.3d 320, 326 (6th Cir.2009))).

## II. SPILLOVER

"Evidentiary spillover occurs 'where evidence establishing the guilt of one defendant, but not admissable [sic] against the other, may create an atmosphere clouding the jury's ability to evaluate fairly the guilt or innocence of the latter.'" *United States v. Weadick*, 15 F.4th 1, 15 (1st Cir. 2021) (alteration in original) (quoting *United States v. Perkins*, 926 F.2d 1271, 1281 (1st Cir. 1991)). An impermissible spillover may occur "where the crimes of some defendants are more horrific or better documented than the crimes of others." *United States v. Martínez*, 994 F.3d 1, 15-16 (1st Cir. 2021) (quoting *United States v. Innamorati*, 996 F.2d 456, 469 (1st Cir. 1993)). "To prevail on an evidentiary spillover claim, the defendant must prove 'prejudice so pervasive that a miscarriage of justice looms.'" *Weadick*, 15 F.4th at 16 (quoting *United States v. Paz-Alvarez*, 799 F.3d 12, 30 (1st Cir. 2015)).

Daprato argues that severance is appropriate because evidence against his codefendants—namely, Soboleski's alleged statement and evidence of his codefendants' alleged violent acts—will cloud the jury's capacity to judge him fairly. The first issue is properly addressed through the *Bruton* framework. Soboleski's alleged statement does not call for severance if it is properly redacted and a limiting instruction is given to the jury.

In addition, evidence of Daprato's codefendants' alleged violent conduct—e.g., the shooting, zip ties, and duct tape—would not prejudice Daprato such that a

miscarriage of justice looms.  Daprato is charged in every count of the indictment except for the counts against Candelario and Carpio for being felons in possession of firearms and ammunition.  *Supra* note 1.  Accordingly, much, if not all of the evidence that Daprato identifies is admissible against him.  "Where evidence featuring one defendant is independently admissible against a codefendant, the latter cannot convincingly complain of an improper spillover effect."  *United States v. O'Bryant*, 998 F.2d 21, 26 (1st Cir. 1993).  Further, the alleged conduct of his codefendants, while grievous, is not so horrific that a jury could not be trusted to fairly evaluate Daprato as an individual.

Daprato also argues that the jury would be confused by the fact that Soboleski is charged only in Count One (conspiracy to commit Hobbs Act robbery), *see* note 1, while Soboleski's alleged level of participation exceeds Daprato's.  It is not clear why this concern qualifies as a question of evidentiary spillover.  It is also not apparent, at this pretrial stage, whether Daprato is correct about his alleged level of culpability as compared to Soboleski.  Regardless, I am not persuaded that such a discrepancy in the Government's charging decisions would confuse the jury and thus significantly prejudice Daprato.

## III.  CONCLUSION

Derek Daprato's Motion to Sever (ECF No. 189) and Jason Candelario's Motion to Sever or Exclude Evidence (ECF No. 191) are **DENIED**.

**SO ORDERED.**

Dated:  April 11, 2022

_____/s/ JON D. LEVY_____
**CHIEF U.S. DISTRICT JUDGE**